## THOMAS PUGH v. THE STATE.

1. CHARGE OF THE COURT.—Other law than that applicable to legitimate deductions from the evidence should not be given in charge to the jury, because calculated to mislead.

2. SAME ON DEGREES OF OFFENSES.—Law applicable to less degrees of the offense charged in the indictment should not be given to the jury unless there be evidence before them requiring such law to be given them. See the opinion for a state of facts in a trial for assault with intent to murder, in view of which a charge upon aggravated assault would have been inapplicable and improper.

3. ASSAULT WITH INTENT TO MURDER.—Armed with a pistol and an open dirk-knife, accused provoked and brought on a personal conflict, during which he shot, and attempted to kill, his antagonist. *Held*, that passion, engendered by the conflict, can supply no mitigation of the offense from an assault with intent to murder to aggravated assault.

4. DRUNKENNESS does not mitigate voluntary crime.

APPEAL from the District Court of Robertson. Tried below before the Hon. S. FORD.

The facts are fully stated in the opinion.

*W. H. Hamman*, for the appellant. The law as expressed by the courts has always been indulgent to those passions and frailties which for the time render a man deaf to the voice of reason; and, whenever and wherever an act is done upon " sudden combat," " previous blows," or " struggling," or " upon provocation by means of words and gestures which are calculated to produce a degree of

exasperation equal to that which would be produced by a violent blow," the courts have always reduced the offense to a lower degree by reason thereof.

Nor are we to overlook the fact that appellant was drinking; for, while "drunkenness neither aggravates nor excuses an act done by a party while under its influence, still it is a fact which may affect both the physical ability and mental condition." *Ferrell* v. *The State*, 43 Texas, 503.

Consider the former relations of Pugh and Bailey. They were kind, agreeable, and confidential. Bailey employed him as his family physician. Indeed, Bailey's liability to Pugh was for professional services.

Consider, again, that the first words spoken by Pugh, "Pay me what you owe me," certainly contain nothing offensive, and that Bailey answered in a manner that indicated feeling; that Pugh, unwilling to misunderstand Bailey, kindly asked him what he meant, to which Bailey again replied harshly and insultingly, calling forth the passion which found expression in the only insulting language used by Pugh; that all the seeming threats of Pugh are conditional; that there was never a time before Bailey got hold of the pistol when Pugh could not have shot him; and, finally, that he had it in his power to cut him to death and he did not, though it is lamentably true that he afterwards shot him.

Will this court say that, in view of all these things, it is so certainly true that Pugh was actuated by malice express, or even implied, that had Bailey died Pugh would have been guilty of murder, and that the limitations imposed by the court upon the jury are therefore correct?

Or will the court not rather say, in the light of the following adjudications, that there is such "doubt as to the degree of the offense committed that the law as to the lesser degree should have been given?" *Boyett* v. *The State*, *ante*, p. 93.

That the circumstances "mitigate or reduce the offense to a lower grade than the one to which the jury were directed, and that the defendant should have the benefit of them under appropriate directions to be given by the court." *Hudson* v. *The State*, 40 Texas, 15.

That the "jury might have found a verdict for an offense of a lower grade, and that that offense should have been distinctly defined." *Johnson* v. *The State*, 43 Texas, 612.

That, even if the "case was one of conflict brought on by the accused, the giving of the law applicable only if the conflict had been brought on with intent to kill, and not instructing upon the law had the conflict been brought on for any other purpose, may have conveyed to the jury the impression that the conflict had been brought on with intent to kill." *Perry* v. *The State*, 44 Texas, 478.

That "the charge was calculated to induce the jury too readily to adopt the conclusion of facts supposed, without sufficiently considering whether there was evidence to warrant the adoption of all these conclusions." *Austin* v. *Falk*, 26 Texas, 130. Also, see following cases: *Williams* v. *The State*, 43 Texas, 382; *Taliaferro* v. *The State*, 40 Texas, 528; *Thomas* v. *The State*, 40 Texas, 43.

But, again, there was hot blood—harsh words had been passed, a struggle for arms had occurred, an armory was at hand; were these appearances of danger or safety? Were they calculated to generate a reasonable belief of danger? If so, then the jury should have been instructed upon the law applicable to such cases. Penal Code, Art. 572; *Horbach* v. *The State*, 43 Texas, 242; *Johnson* v. *The State*, 27 Texas, 758; *Campbell* v. *The People*, 16 Ill. 17; *Shorter* v. *The People*, 2 Comst. 193; *Tongan* v. *Com.*, 2 Penn. (Wright) 265.

*George McCormick*, Assistant Attorney General, for the State.

ECTOR, P. J.   Doctor Thomas Pugh was indicted in the
district court of Robertson county for an assault with intent
to murder.   The defendant moved for a new trial, which was
overruled.

Judgment having been rendered upon the verdict, the de-
fendant appealed, and has assigned the following errors, viz. :

" 1st. It was error in the court not to instruct the jury as
to the law of aggravated assault.

" 2d. It was error not to instruct the jury upon the law
applicable to the facts showing an appearance of danger.

" 3d. It was error to overrule defendant's motion for a
new trial."

We will first notice the 2d error assigned.

The law requires the judge who presides at the trial, after
the argument has concluded, in every case of felony, whether
asked or not, to deliver a written charge to the jury, in
which he shall distinctly set forth the law applicable to the
case ; but, in doing this, he must not express any opinion as to
the weight of evidence, nor sum up the evidence. Pasc. Dig.,
Art. 3059.   It is the duty of the court to give only such
instructions as are applicable to every legitimate deduction
which the jury may draw from the facts.

In the case at bar the district judge, in his charge to the
jury, first gave the jury the legal definition of an assault
and battery, and also of an assault ; second, he defined
murder as it is done by our Penal Code ; and, third, he next
instructed the jury as to the legal definition of express and
implied malice.

Below we copy the 4th, 5th, and 6th instructions from
the judge's charge :

" 4th. If the jury believe from the evidence in this case that
defendant shot Bailey, and that if he had killed him (Bailey)
such killing would have been a killing upon express or
implied malice, you will find him guilty of an assault with
intent to murder. ·

"5th. If the jury believe from the evidence that the defend-ant shot Bailey for the purpose of preventing Bailey from murdering or maiming him, or from doing him some serious bodily harm, you will acquit; but, to justify the defendant upon this ground, it must reasonably appear by the acts of Bailey that it was the purpose and intent of Bailey to mur-der or maim defendant, or do him some serious bodily harm, and it must further appear that defendant shot Bailey while Bailey was in the act of attempting to murder or maim him (defendant), or to do him some serious bodily harm, or after some act done by Bailey showing evidently an intent on his part to murder or maim defendant, or to do him some bodily injury.

"6th. If you believe from the evidence that defendant shot Bailey to protect his own person against any unlawful and violent attack of Bailey upon defendant, the shooting was justifiable; but, to justify the defendant upon this ground, the attack of Bailey must have been such as pro-duced in the mind of the defendant a reasonable expectation or fear of death, or some serious bodily harm."

We have copied so extensively from the charge of the court to show that the jury were fully and fairly instructed as to the law of self-defense. The 2d error assigned we think is not well taken.

We will now proceed to notice the 1st error assigned.

The counsel for defendant, in his ingenious brief, mainly labors to satisfy us that the lower court should have instructed the jury as to the law of aggravated assault. To determine whether or not such charge was necessary, we will briefly refer to the evidence as we find it in the record. The evidence shows that the defendant shot Bailey in his (Bailey's) store, near sunset, on August 28, 1875, on Mun-ford's Prairie, in Robertson county. Before the day of the shooting defendant and Bailey had been on friendly terms, and defendant was familiar with "the run of Bailey's store."

Bailey testifies that, a few hours before the shooting, Dr. Pugh " came by me in my store and said, ' You don't know me, do you?' I said, ' Yes.' He said, ' You will be damned sure to know me when you see me again.' * * , * There was a double-barrel shot-gun and holster-pistol behind the counter, also a sixteen-shooting rifle at the upper end of the counter. The pistol was about three feet from the money-drawer ; sometimes it was put in the money-drawer."

George McNutt, for the state, testified that " my store is about fifty yards from B. B. Bailey's store. A little while before defendant shot Bailey defendant had his pistol out, at my store. I made him a drink. Defendant said he was going over to Bailey's store ; to watch and we would hear a pistol in about fifteen minutes ; and he left, going in the direction of Bailey's store ; and, sure enough, in a short time we did hear a pistol fire. Defendant had taken several drinks—had a good deal of steam on." * * *

We will return to Bailey's testimony. Bailey further testifies that "I was standing in my store, waiting on some customers, when defendant, Dr. Pugh, came into my store and asked me to pay him what I owed him. I replied, I would do so if I owed him anything. He said, ' Do you intimate that you don't owe me?' I replied, ' I did not say so ; you can interpret it as you damn please.' He said, ' You are a damn son of a bitch,' and immediately presented a pistol at me. I caught the pistol, when he drew a dirk and cut at my hand, and cut it slightly on the finger. I turned loose the pistol, when he shot me in the breast. I was badly wounded, and fell behind the counter. * * * I was confined to my room several weeks. * * * I was, at the time he drew his pistol, selling some goods to a customer, and was in the act of dropping some money in the money-drawer. Defendant said, ' Hands up.' I elevated my hands when he said hands up ; and he then presented his pistol at me and I caught it, and he cut my finger and I turned it

loose, and he shot me.   *   *   *   The knife was a dirk-knife, and already open when he drew it; and at the time I was shot by Dr. Pugh I was making no attempt to get any weapon, nor did I at any time make any hostile demonstrations.''

The witnesses Stewart, Williams, and Taylor, who saw the difficulty, do not materially differ in their testimony from the account given of it by Bailey. The defendant offered no evidence on the trial. After the shooting took place the accused cut the bridle-rein by which his horse was tied, mounted him, and was not seen again, by any of the witnesses, in Robertson county until he was captured by the sheriff on April 16, 1877.

The counsel for the defendant neither excepted to the charge of the court nor asked any additional instructions. We have failed to discover anything in the evidence which rendered it necessary for the presiding judge in the court below to charge the jury upon an aggravated assault. In our judgment there was not a particle of evidence before the jury which rendered such a charge necessary. There was no conflict in the evidence. If we are correct in this, a charge upon the law of aggravated assault would have been improper, and the only effect such a charge could have had would have been, perhaps, to have confused the minds of the jury.

If there is no mitigating or extenuating circumstance which requires a charge upon any lower degree of offense, the presiding judge should not give one. *Dorsey* v. *The State*, 1 Texas Ct. of App. 33; *Washington* v. *The State*, 1 Texas Ct. of App. 647; *Holden* v. *The State*, 1 Texas Ct. of App. 235.

In this case the defendant, being armed with a six-shooter and an open knife concealed about his person, brought on a personal conflict with Bailey, and in that conflict attempted to kill him; and he cannot legally contend that the conflict

35

rendered his mind incapable of cool reflection, and thereby reduced the offense to an aggravated assault.

When one charged with committing an assault with intent to murder is shown to have given the first insult, and to have begun himself the attack which finally resulted in the effort on his part to kill, he cannot mitigate the offense by showing that he attempted to kill under the immediate influence of sudden passion caused by injuries received from his adversary during the rencounter. In this case, as was said in the case of *Crane* v. *The State* (41 Texas, 494), the insult, the passion, and the assault were all on the side of the defendant.

The counsel for the defendant insists we should not overlook the fact that defendant was drinking when the difficulty occurred between him and Bailey, and that, while drunkenness neither aggravates nor excuses an act done by a party under its influence, still it is a fact which affects the physical ability and mental condition of the accused at the time.

The mere fact of drunkenness alone will not reduce to manslaughter a homicide which would otherwise be murder, much less extract from it its indictable quality. The fact of being drunk, or mere mental excitement or ungovernable rage which may be engendered by drinking intoxicating liquors, will not reduce the crime of a voluntary killing below the grade of murder. *Farrer* v. *The State*, 42 Texas, 272.

The facts in evidence did not authorize the court to charge the law applicable to a less grade of offense than assault with intent to murder. The lower court properly overruled defendant's motion for a new trial.

The judgment is affirmed.

*Affirmed.*